UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JOHN LICAUSI,

                         Petitioner,

    v.                                       **MEMORANDUM &**
                                           **ORDER**
THOMAS GRIFFIN, Superintendent of the      CV 17-2459 (GRB)
Green Haven Correctional Facility,

                         Respondent.
-------------------------------------------------------------X
**GARY R. BROWN, United States District Judge:**

     *Pro se* petitioner John Licausi was convicted after trial in the County Court of Suffolk

County of several offenses arising out of a vehicular homicide.  Initially sentenced to twenty-five

years to life by the trial court, the New York Appellate Division, Second Department, later

reduced the sentence on appeal, as an exercise of discretion, to an indeterminate sentence of

incarceration for eighteen years to life.  Petitioner now seeks a writ of habeas corpus under 28

U.S.C. § 2254.  Writ, Docket Entry ("DE") 1.  For the reasons set forth herein, the petition is

DENIED.


## FACTUAL BACKGROUND

     The following facts, drawn from the state court trial record, are summarized "in the light

most favorable to the verdict."  *Garbutt v. Conway*, 668 F.3d 79, 80 (2d Cir. 2012).

     On May 7, 2008, at around 4:48 pm, petitioner checked into the Econo Lodge motel in

Ronkonkoma, New York.  Trial Tr. 1061, 1070, 1090.[1]  By petitioner's own admission, he had

---

[1] Pages 1 to 745 of the Trial Transcript can be found in Docket Entry 20-3, and pages 746 to
1529 can be found in Docket Entry 20-4.

used one gram of cocaine that evening between 6:00 to 8:00 pm. *Id.* at 1090, 1113. The next day, petitioner checked out of the motel at 10:19 am. *Id.* at 1062.

On May 8, 2008, at approximately 11:30 am near the intersection of Granny Road and Mount McKinley Avenue in Farmingville, New York, petitioner, who was in a "green four by four" vehicle, approached Keith Corr, a landscaper, in an effort to sell Corr landscaping equipment. Trial Tr. 91. Corr, who suspected petitioner "to be the person who had stolen equipment from [him] two days prior," told petitioner that he had to call his wife to obtain cash to buy the equipment. *Id.* at 92. Instead, Corr called 911. *Id.*

At around 11:45 am, Police Officer Michael Bogliole of the Sixth Precinct of the Suffolk County Police Department responded to the radio call. *Id.* at 358. Before responding to the scene, Officer Bogliole had learned of the license plate of petitioner's vehicle, conducted a computer check, and found that petitioner had an active warrant for petit larceny. *Id.* at 72, 360. Officer Bogliole arrived on scene at approximately 11:50 am. *Id.* at 94, 361.

Petitioner was waiting inside his vehicle, and Corr identified petitioner to Officer Bogliole. *Id.* at 94, 361. Officer Bogliole approached petitioner, asked him to step out of his vehicle, and produce his driver's license. *Id.* at 94, 362. Officer Bogliole noticed that petitioner's eyes were glassy and he was "shaking." *Id.* at 363. Officer Bogliole asked petitioner to stand in front of the police vehicle while the officer took steps to verify that the petit larceny warrant was active. *Id.* at 364.

Corr and petitioner began arguing. *Id.* at 364-65. According to Officer Bogliole, petitioner "look[ed] like he was going to flee," prompting Officer Bogliole to repeatedly direct petitioner to "stop" and "don't move." *Id.* at 365, 367. Disregarding the officer's directive, petitioner ran towards his vehicle. *Id.* at 94, 367-68. The officer attempted to intervene, and the

officer and petitioner physically struggled near the driver seat of petitioner's vehicle. *Id.* at 94, 360-376. Petitioner managed to break free and fled by car. *Id.* at 94, 370, 376. Officer Bogliole entered his patrol vehicle, activated emergency lights, and pursued the petitioner. *Id.* at 375.

By Officer Bogliole's account, petitioner drove erratically as "he took off with his door open," and at one point, with "[t]he speed that he was going, the vehicle actually started coming up on the left side." *Id.* at 376-77, 381. Officer Bogliole saw petitioner drive through four stop signs and a steady red light, cross the double yellow line, travel southbound on the northbound lane, and overtake other cars on the road. *Id.* at 377-85.

Petitioner, who took the stand in his own defense, admitted at trial that he had "disobeyed a police officer's direct order" when he drove away. *Id.* at 1141. Although his account of the route taken differed from that of the officer, petitioner admitted that he was speeding. *Id.* at 1147, 1151. He testified that he did not completely stop near one stop sign, ran through two stop signs, but denied that he drove through the steady red light. *Id.* at 1146-51. He also testified that he crossed the double yellow line and drove southbound in the northbound lane. *Id.* at 1171.

Before noon on May 8, 2008, Maria Grosso, a local resident, saw from her house, "a vehicle speeding down the road" that did not stop at a stop sign on Old Medford Avenue, being pursued by a police vehicle at a distance of "four houses". Trial Tr. 154, 164. Around that time, Theodore Petersen, a United Parcel Service driver, saw a vehicle pass him on the northbound lane on Old Medford Avenue, and a police car in pursuit. *Id.* at 172.

When petitioner's vehicle reached the intersection of Old Medford Avenue and Horseblock Road, "[petitioner's] vehicle went through the red light, [and] struck a gray vehicle." Trial Tr. 386; *see also id.* at 275, 1178. Officer Bogliole described an "explosion," with "car parts, debris, a cloud, and then this whole mass actually looked like it went up in the air and then

right into the woods." *Id.* at 386.  An eyewitness testified he saw "[a]n explosion of material . . . just going straight up out in a fan pattern, some of the debris traveling higher than the traffic light was." *Id.* at 245.

A collision reconstruction expert testified that petitioner's vehicle was traveling at a minimum of 57 miles per hour at the time of collision.  *Id.* at 884.  Crime scene analysis demonstrated "there was no braking involved prior to the collision of the vehicles" based upon the lack of tire marks preceding the point of impact.  *Id.* at 626.  One eyewitness saw petitioner's vehicle appear to accelerate when entering the intersection.  *Id.* at 281.  Petitioner testified, on the other hand, that he "braked," and "skidded through the intersection."  *Id.* at 1191-92.

Petitioner's vehicle was traveling southbound along Old Medford Avenue, and the gray vehicle was traveling westbound on Horseblock Road.  *Id.* at 883.  After the collision, both petitioner's vehicle and the gray vehicle traveled together in a "southeasterly direction," striking other vehicles.  *Id.* at 245-46, 270-71, 299, 883-84.

At 11:56 am, Officer Bogliole approached the petitioner, who had exited his vehicle, and arrested him.  Trial Tr. 248, 300, 319, 465, 525.  Other officers arrived on scene and ultimately transported the petitioner to the Sixth Precinct.  *Id.* at 388, 593-94, 604.  Several witnesses testified that petitioner did not complain of any pain or request medical attention at the time of arrest.  *Id.* at 593-94, 606.

Scott Foster, a salesman at Home Depot, who was married with three children, had been driving the gray vehicle.  Trial Tr. 207-11, 469-71.  Officer Bogliole approached Mr. Foster's vehicle, and saw Foster's body "hanging out of the vehicle."  *Id.* at 389.  Officer Bogliole  was unable to detect Mr. Foster's pulse or signs of breathing, and began administering first aid.  *Id.* Other police officers and the ambulance arrived to assist Mr. Foster.  *Id.* at 969.  Mr. Foster was

transported to Brookhaven Hospital where he declared dead at 12:45 pm. *Id.* at 970-72. Doctor Odette Hall from the Suffolk County Medical Examiner's Office determined that Mr. Foster had died from "blunt impact injuries of his head and his torso." *Id.* at 979.

At the Sixth Precinct, Police Officer Robert Copozzi from Highway Patrol administered tests to petitioner "to identify signs and symptoms associated with someone who has taken certain classes of drugs." *Id.* at 716. Officer Copozzi found, *inter alia*, that petitioner exhibited slurred speech, bloodshot eyes, swaying while standing up, and an inability to maintain balance on one leg. *Id.* at 686-700. Officer Copozzi also interviewed the petitioner. Petitioner stated that his "chest was sore," but did not ask to go to the hospital. *Id.* at 695-96. Petitioner further stated that he used about a gram of cocaine "two days ago" at a motel, and that "[h]e relapsed and went on this binge." *Id.* at 700-01. Officer Copozzi concluded that at the time of the crash, petitioner was "impaired and not able to operate a motor vehicle safely, and he was impaired by a [Central Nervous System] stimulant." *Id.* at 702, 793. Officer Copozzi came to this conclusion independent of any blood test results. *Id.* at 793.

When Officer Bogliole spoke with the petitioner, petitioner declined to consent to a blood test or make a statement.[2] *Id.* at 403, 425, 540. Officer Bogliole advised the case detective that petitioner did not consent to a blood test. *Id.* at 1065. At approximately 4:00 pm, the case detective obtained a court warrant to obtain a sample of petitioner's blood. *Id.* at 404, 1063. At 5:16 pm, a physician assistant from the Suffolk County Medical Examiner's Office obtained

---

[2] It is unclear whether petitioner made statements to Officer Copozzi before or after declining to make a statement to Officer Bogliole. *See* Trial Tr. 403, 424, 680, 694-700 (Officer Copozzi began his evaluation of petitioner at 3:10pm; petitioner declined the blood test with Officer Bogliole at 4:15pm; Officer Copozzi began questioning after 4:45 pm, and the trial record remains unclear when petitioner declined to make statements to Officer Bogliole).

petitioner's blood sample, and delivered the sample to Officer Bogliole.  *Id.* at 577, 658.  Officer Bogliole submitted the blood kit to the laboratory for analysis.  *Id.* at 579.

Petitioner was treated at a hospital the evening of May 8, 2008.  Trial Tr. 1124.  Petitioner suffered no broken bones, was given Tylenol, and released from the hospital.  *Id.* at 1124-25.  Petitioner was brought to court the following morning.  *Id.* at 1115.

Analysis from forensic scientists at the Suffolk County Medical Examiner's Office found the presence of a metabolite of cocaine and 129 micrograms per liter of cocaine in petitioner's blood.  *Id.* at 831.  Lori Arendt, a forensic scientist from the Suffolk County Medical Examiner's Office, testified "if a person were to have a blood sample taken at 5:15 p.m. and is found to have 129 micrograms per liter of actual cocaine in their blood," that amount of cocaine in petitioner's blood stream should be "significantly higher" at the time of the collision.  *Id.* at 832-33.  Ms. Arendt also testified that the level of cocaine in the bloodstream is inconsistent with petitioner using cocaine one or two days beforehand and not on May 8, 2008 because, if that were the case, the cocaine would have completely broken down in the body by the time petitioner's blood sample was taken.  *Id.* at 831-32.[3]  Petitioner denied having used cocaine on May 8, 2008.  Trial Tr. 1113.

Petitioner testified that Officer Bogliole repeatedly told petitioner to "shut the F up" during the verbal dispute between petitioner and Corr.  *Id.* at 1100.  This caused petitioner "to get heated," leading to the car chase.  *Id.* at 1141.  The car chase "forced [petitioner] to panic."  *Id.* at 1188.  Therefore, petitioner argues, Officer Bogliole is to blame for "forcing" petitioner into "a

---

[3] At trial, petitioner's counsel initially requested the prosecution introduce testimony of the forensic scientist who tested petitioner's blood.  Trial Tr. 803.  However, counsel, upon consultation with the petitioner, consented to the testimony of Ms. Arendt, the forensic scientist who wrote the final report, as "the sole witness from the lab."  *Id.* at 810.

hazardous situation." *Id.* at 1175-76; *see also id.* at 1194 ("You say I killed him.  It was an accident.  It was a fatal accident caused by Officer Bogliole's reckless pursuit of me, yes, absolutely.").

The jury convicted petitioner of the felonies of aggravated vehicular homicide, manslaughter in the second degree, and unlawful fleeing a police officer in a motor vehicle in the first degree, along with various misdemeanors and traffic infractions.  Trial Tr. 1515-23.  The court sentenced defendant to concurrent sentences of imprisonment of twenty-five years to life for each of his convictions of aggravated vehicular homicide, manslaughter in the second degree, and unlawful fleeing a police officer in a motor vehicle in the first degree, and lesser sentences on the other convictions that are not at dispute here.  Oct. 21, 2010 Sentencing Tr. 39-40, DE 20-5 at 153-54.


## PROCEDURAL BACKGROUND

*1.  State Court Procedural History*

Petitioner filed a direct appeal through appellate counsel.  Appellant Br., DE 20 at 1. Petitioner also submitted a "*pro se* supplemental brief" on direct appeal.  *Pro Se* Supp. Br., DE 20 at 163.  On November 12, 2014, the New York Appellate Division, Second Department, upheld the conviction, but reduced the sentence imposed upon the convictions of aggravated vehicular homicide, manslaughter in the second degree, and unlawful fleeing a police officer in a motor vehicle in the first degree from twenty-five years to life incarceration to eighteen years to life imprisonment as a matter of discretion in the interest of justice.  *People v. Licausi*, 122 A.D.3d 771, 772 (N.Y. App. Div., 2d Dep't 2014).  The New York Court of Appeals denied leave to appeal on June 8, 2015.  *People v. Licausi*, 25 N.Y.3d 1166 (2015).

On April 4, 2013, while petitioner's direct appeal was pending, petitioner, filing *pro se*, moved to vacate his conviction under Criminal Procedure Law ("CPL") § 440.10.  Licausi 1st 440 Mot. Aff., DE 20 at 263.  On June 20, 2013, the Suffolk County Supreme Court denied the motion.  Decision and Order dated June 20, 2013, DE 20 at 320.  On September 18, 2013, the Second Department denied a certificate for leave to appeal.  Order dated Sept. 18, 2013, DE 20 at 374.  On December 16, 2013, the Second Department denied petitioner's motion for leave to reargue.  Order dated Dec. 16, 2013, DE 20 at 420.[4]

On December 10, 2015, petitioner, filing *pro se*, moved to vacate judgment a second time under CPL 440.10, arguing ineffective assistance of trial counsel and newly discovered evidence.  Licausi 2d 440 Mot. Br., DE 20-1 at 1.  On June 30, 2016, the County Court of Suffolk County denied petitioner's motion in the entirety.  Order dated June 30, 2016 at 2-3, DE 20-1 at 311-12.  On July 21, 2016, petitioner moved for leave to renew his second motion to vacate judgment.  Br. dated July 21, 2016 at 8, DE 20-1 at 314.  On December 6, 2016, the County Court denied petitioner's request.  Short Form Order dated Dec. 6, 2016, DE 20-1 at 404.

On August 8, 2016, petitioner filed a motion for leave to appeal the June 30, 2016 Order to the Second Department.  Notice dated Aug. 8, 2016, DE 20-1 at 407.  On January 18, 2017, the Second Department denied leave to appeal.  Order dated Jan 18, 2017, DE 20-1 at 711.

---

[4] The copy of the Order dated December 16, 2013 submitted by respondent is not signed by the court.  *See* Order dated Dec. 16, 2013, DE 20.  The Court takes judicial notice of the Order since it is a publicly available document.  *See Mira v. Kingston*, 218 F. Supp. 3d 229, 234 (S.D.N.Y. 2016), *aff'd*, 715 F. App'x 28 (2d Cir. 2017).

On January 15, 2020, the Second Department denied petitioner's writ of error *coram nobis* as to petitioner's argument of ineffective assistance of appellate counsel.[5]  *People v. Licausi*, 179 A.D.3d 841 (N.Y. App. Div., 2d Dep't 2020).

### 2.  The Instant Petition

On April 12, 2017, petitioner filed the instant writ of habeas corpus.  Writ, DE 1. Petitioner then filed two motions to appoint counsel.  DE 3, 9.  On March 31, 2018, the Honorable Joan M. Azrack denied the motions to appoint counsel.  DE 26 at 3.  Petitioner filed a motion to stay the case to exhaust claims in state court.  DE 30.  On March 31, 2019, Judge Azrack denied the motion without prejudice because petitioner failed to show good cause why he did not exhaust in state court, and because he failed to show that the unexhausted claims were potentially meritorious.  DE 35 at 2.

On January 31, 2020, the case was reassigned to the undersigned by random selection. On March 12, 2020, petitioner filed a motion to reconsider appointment of counsel, which shall be decided as part of the instant petition.  DE 46.

---

[5] The writ of error coram nobis was originally a remedy at common law to correct errors of fact. *See United States v. Morgan*, 346 U.S. 502, 507 & n.9 (1954) (quoting 2 Tidd's Practice 1136-1137 (4th Am. ed.) ("if a judgment in the King's Bench be erroneous in matter of fact only, and not in point of law, it may be reversed in the same court, by writ of error coram nobis, or quae coram nobis resident; so called, from its being founded on the record and process, which are stated in the writ to remain in the court of the lord the king, before the king himself")).  In New York, the writ has expanded to include ineffective assistance of appellate counsel claims.  *See People v. Brun*, 15 N.Y.3d 875, 877 (2010).

## LEGAL STANDARD FOR HABEAS REVIEW

Federal courts are empowered to "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. 2254(a).  That substantive limitation—that is, the grounds for such petitions are limited to, as relevant here, federal constitutional violations—is further constrained by a number of procedural requisites.

### 1.  The Exhaustion Doctrine

Title 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
>
> (A) the applicant has exhausted the remedies available in the courts of the State . . .

28 U.S.C. § 2254(b); *see Inoa v. Smith*, No. 16-CV-2708 (VEC)(JLC), 2018 WL 4110908, at *11 (S.D.N.Y. Aug. 29, 2018), *report and recommendation adopted*, 2019 WL 549019 (S.D.N.Y. Feb. 9, 2019) (citation omitted) ("a federal court may not grant habeas relief unless the petitioner has first exhausted his claims in state court.").  "Exhaustion 'requires that the prisoner 'fairly present' his constitutional claim to the state courts, which he accomplishes by presenting the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it.'"  *Inoa*, 2018 WL 4110908, at *11 (citing *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014)); *see also Smith v. Duncan*, 411 F.3d 340, 348 (2d Cir. 2005).

Where petitioner's claims are unexhausted, the petitioner should be "permitted to return to state court to exhaust his claims unless no state corrective procedure remains available." *Brown v. Senkowski*, 152 F. App'x 15, 18 (2d Cir. 2005).  However, where petitioner no longer has any avenue in state court to obtain review of his unexhausted federal constitutional claims, then those claims are procedurally barred under the exhaustion doctrine. *Id.* (citing *Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989)); *see also Redding v. New York State Dep't of Corr.*, No. 17-CIV-7075 (CS)(JCM), 2020 WL 614835, at *11 (S.D.N.Y. Feb. 10, 2020) (citing *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997)); *Brown v. Bell*, No. 9:18-CV-01406-JKS, 2020 WL 972373, at *5 (N.D.N.Y. Feb. 28, 2020).

2. *Independent and Adequate Procedural Bar*

Another procedural prerequisite is commonly referred to as the "independent and adequate procedural bar."   That is, the district court will not consider a basis for attacking a conviction where a state court has found that argument to be procedurally barred based upon a state law provision "that is independent of the federal question and adequate to support the judgment.'"  *Henriquez v. LaClair*, No. 19-CV-2265 (JMF), 2020 WL 1233633, at *2 (S.D.N.Y. Mar. 13, 2020) (citing *Downs v. Lape*, 657 F.3d 97, 101 (2d Cir. 2011); *see also Garner v. Lee*, 908 F.3d 845, 859 (2d Cir. 2018) (citing *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017)).  In other words, if the state court refused to consider an argument because it was procedurally barred under state law, generally that argument is barred for habeas review.

The "independent" prong of this concept means 'state court must actually have relied on the procedural bar as an independent basis for its disposition of the case' by ' 'clearly and expressly' stat[ing] that its judgment rests on a state procedural bar.'"  *Terrell v. Kickbush*, No.

17-CV-7027 (JFB), 2019 WL 3859512, at *5 (E.D.N.Y. Aug. 16, 2019) (quoting *Harris*, 489 U.S. at 261-63 n.12); *see Garner*, 908 F.3d at 859 (citation omitted).  If there is any "ambiguity" that the judgment rests on a state procedural bar, then federal courts should "presume that the state court resolved the decision on the merits and that [federal courts] are not precluded from reviewing the claim's merits."  *Garner*, 908 F.3d at 859 (citation omitted).  Accordingly, a state court opinion holding "a group of contentions is either without merit 'or' procedurally barred" raises such an ambiguity.  *Id.*  On the other hand, "when a state court says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim is procedurally defaulted."  *Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005).

Adequacy presents a separate question: "A procedural rule is adequate if it is ''firmly established and regularly followed' by the state in question.'"  *Terrell*, 2019 WL 3859512, at *5 (quoting *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999)).  "[E]ven if a procedural bar is 'firmly established and regularly followed,' a petitioner may still challenge the adequacy of the bar in exceptional cases where the state court's application of the rule was 'exorbitant,' render[ing] the state ground inadequate to stop consideration of the federal question."  *Pierotti v. Walsh*, 834 F.3d 171, 177 (2d Cir. 2016).

### 3.  The Cause and Prejudice Exception

"A federal habeas court may not review a procedurally barred claim on the merits unless the petitioner can demonstrate 'cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[ ] will result in a fundamental miscarriage of justice.'"  *Terrell*, 2019 WL 3859512, at *5; *see Smith v. Duncan*, 411 F.3d 340, 347 (2d Cir. 2005).

A petitioner can demonstrate cause as follows: "(1) the factual or legal basis for a petitioner's claim was not reasonably available to counsel, (2) some interference by state officials made compliance with the procedural rule impracticable, or (3) the procedural default was the result of ineffective assistance of counsel." *Terrell*, 2019 WL 3859512, at *5 (citing *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994); *McLeod v. Graham*, No. 10 Civ. 3778 BMC, 2010 WL 5125317, at *3 (E.D.N.Y. Dec. 9, 2010)).  Prejudice can be demonstrated by showing that the error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Terrell*, 2019 WL 3859512, at *5 (citing *Torres v. Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003)).  Finally, a miscarriage of justice is demonstrated in extraordinary cases, such as where a "constitutional violation has probably resulted in the conviction of one who is actually innocent," which means, the petitioner must demonstrate that "more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt." *Id.* (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *House v. Bell*, 547 U.S. 518-19, 536 (2006)); *see also Hyman v. Brown*, 927 F.3d 639, 655 (2d Cir. 2019).

### 4.   AEDPA Deference

Where an issue has been determined by a state court, the statute provides a highly deferential standard of review.  "[A] habeas petition is not a vehicle to relitigate every issue previously determined in state court." *Duren v. Lamanna*, 18-CV-7218 (JS), 2020 WL 509179, at *8 (E.D.N.Y. Jan. 30, 2020) (citing *Herrara v. Collins*, 506 U.S. 390, 401 (1993)); *see also Santiago v. Sheahan*, No. 19-CV-6529-FPG, 2020 WL 1956348, at *3 (W.D.N.Y. Apr. 23, 2020).  Title 28 U.S.C. § 2254, as amended by the AEDPA "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the

benefit of the doubt." *Duren*, 2020 WL 509179, at *8 (quoting *Jones v. Murphy*, 694 F.3d 225,

234 (2d Cir. 2012)).  "The deferential AEDPA standard of review will be triggered when the

state court has both adjudicated the federal claim 'on the merits' and reduced its disposition to

judgment. . . . Where the state court 'did not reach the merits' of the federal claim, however,

'federal habeas review is not subject to the deferential standard that applies under AEDPA. . . .

Instead, the claim is reviewed *de novo*.'" *Contant v. Sabol*, 987 F. Supp. 2d 323, 349 (S.D.N.Y.

2013) (citing 28 U.S.C. § 2254(d); *Cone v. Bell*. 556 U.S. 449, 472 (2009); *Sellan v. Kuhlman*,

261 F.3d 303, 312 (2d Cir.2001)).

 Under this standard, "when a state court has 'adjudicated' a petitioner's federal habeas

claim on the merits, a district court may grant relief only if the state court's decision was

'contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States,' [28 U.S.C.] § 2254(d)(1), or if the

decision 'was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding,' *id.* § 2254(d)(2)." *Garner*, 908 F.3d at 860.  Petitioner

carries the burden of proof.  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

 "Clearly established Federal law" means holdings, as opposed to *dicta*, of [the Supreme]

Court's decisions as of the time of the relevant state-court decision."  *Terrell*, 2019 WL 3859512,

at *4 (citing *Green*, 414 F.3d at 296).  A decision is "contrary to" clearly established federal law

"if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a

question of law or if the state court decides a case differently than [the Supreme Court] has on a

set of materially indistinguishable facts."  *Terrell*, 2019 WL 3859512, at *4 (quoting *Williams*,

529 U.S. 362, 413 (2000)); *see also Duren*, 2020 WL 509179, at *8 (citing *Williams*, 529 U.S. at

412-13).

An "unreasonable application" of clearly established federal law occurs "if a state court 'identifies the correct governing legal principles from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Terrell*, 2019 WL 3859512, at 4 (citing *Williams*, 529 U.S. at 413); *Duren*, 2020 WL 509179, at *8 (citing *Williams*, 529 U.S. at 413). "[A] federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'" *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013); *see also Garner*, 908 F.3d at 861 n.14.

Furthermore, this review applies even where the state court issues a "summary denial." *Cullen v. Pinholster*, 563 U.S. 170, 187 (2011); *see also Bethea v. Walsh*, No. 09-CV-5037 (NGG), 2016 WL 258639, at *10 (E.D.N.Y. Jan. 19, 2016) (citing *Harrington v. Richter*, 562 U.S. 86, 98 (2011); *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001)). In such a case the "unreasonable application" prong of § 2254(d)(1) can be satisfied only by showing there was no reasonable basis for the state court's decision. *Pinholster*, 563 U.S. at 188. "[A] habeas court must determine what arguments or theories . . . could have supporte[d] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* Courts examine the "last reasoned decision" by the state courts in determining whether a federal claim was adjudicated on the merits. *Redding v. New York State Dep't of Corr.*, No. 17-CIV-7075 (CS)(JCM), 2020 WL 614835, at *13 (S.D.N.Y. Feb. 10, 2020) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)).

Under AEDPA, "a determination of a factual issue made by a State court [is] presumed to be correct," and the petitioner has the burden of rebutting the presumption of correctness by clear

and convincing evidence. *See Inoa*, 2018 WL 4110908, at *12 (citing *Cardoza v. Rock*, 731 F.3d

169, 178 (2d Cir. 2013)). "Finally, federal review under either prong of § 2254(d)(1) 'is limited

to the record that was before the state court that adjudicated the claim on the merits.'" *Jackson v.*

*Conway*, 763 F.3d 115, 135 (2d Cir. 2014) (citing *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99

(2011)) (holding it error for the District Court to have granted an evidentiary hearing).[6]


   5.  *Evaluating Claims of Ineffective Assistance of Counsel*

     The Court considers claims of ineffective assistance of counsel upon *de novo* review.[7]

"In order to prevail, [petitioner] must first satisfy the prongs of *Strickland* [*v. Washington*, 466

U.S. 668, 689 (1984)] on *de novo* review on the merits." *Rosario*, 601 F.3d at 126. "In

*Strickland*, the Supreme Court promulgated a two-prong test to evaluate ineffective assistance of

counsel claims: 'a defendant must demonstrate both 'that counsel's performance was deficient'

and 'that the deficient performance prejudiced the defendant.''" *Garner*, 908 F.3d at 860-61

(citing *Strickland*, 466 U.S. at 687). The Court need not address both components of the inquiry

---

[6] Even considering a claim *de novo* because the state court did not adjudicate on the merits, "Section 2254(e)(2) imposes a limitation on the discretion of federal habeas courts to take new evidence in an evidentiary hearing." *Pinholster*, 563 U.S. 186; *see also Brown v. Bell*, No. 9:18-CV-01406-JKS, 2020 WL 972373, at *6 (N.D.N.Y. Feb. 28, 2020) ("*Pinholster* also made clear that the discretion to grant a request for an evidentiary hearing is cabined by § 2254(e)(2)").
[7] AEDPA deference applies in the context of ineffective assistance of counsel. *See Gross v. Graham*, No. 16-3220, 2020 WL 628738, at *2 (2d Cir. Feb. 11, 2020) (citing *Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010)). The last reasoned state court decision held that the all claims are procedurally barred under state law. *See* Order dated June 30, 2016 at 2-3, DE 20-1 at 311-12. The Second Circuit held, however, that an ineffective assistance of counsel claim under New York law generally cannot be procedurally barred since "ineffective assistance of counsel claim turns on facts that are outside of the trial-court record." *Pierotti v. Walsh*, 834 F.3d 171, 178 (2d Cir. 2016); *see also Ayestas v. Davis*, 138 S. Ct. 1080, 1087 (2018). Therefore, the Court considers all of the claims *de novo*. *Cf. Rosario*, 601 F.3d at 126 (holding petitioner must satisfy *Strickland* upon de novo review of the merits to recover, but finding petitioner did not prevail under deferential AEDPA standard).

if the petitioner makes an insufficient showing on either prong.  *Id.* (citing *Strickland*, 466 U.S. at 687).  The ineffective assistance of counsel review under § 2254 is limited to the record that was before the state court that adjudicated the claim on the merits.  *Jackson*, 763 F.3d at 152 (citing *Pinholster*, 131 S. Ct. at 1392, 1401); *Ridgeway v. Zon*, 424 F. App'x 58, 59 (2d Cir. 2011) (citing *Pinholster*, 131 S. Ct. at 1413).[8]

"To establish deficient performance, Petitioner must prove that 'counsel's representation fell below an objective standard of reasonableness."  *Duren*, 2020 WL 509179, at *20 (citing *Strickland*, 466 U.S. at 688).  However, "[c]onstitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Terrell*, 2019 WL 3859512, at *8 (citing *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005)).  In reviewing the totality of the evidence, the Court must "use a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt."  *Duren*, 2020 WL 509179, at *19 (quoting *Burt v. Titlow*, 571 U.S. 12, 15 (2013)).  Moreover, in reviewing claims of ineffective assistance, the Court must be mindful of the broad range of strategic decisions that fall within the purview of trial counsel, and that such decisions often cannot be fairly viewed from the lofty perch of hindsight.  *See Terrell*, 2019 WL 3859512, at *8 (quoting *Wells*, 417 F.3d at 319); *see also Florida v. Nixon*, 543 U.S. 175, 187-92 (2004) (holding the client is "the ultimate authority" for certain critical decisions in a criminal case, but strategic decisions, such as conceding the guilt phase in a capital trial, can be

---

[8] The Second Circuit would previously require offer the "assertedly ineffective attorney an opportunity to be heard and to present evidence, in the form of live testimony, affidavits, or briefs."  *Sparman v. Edwards*, 154 F.3d 51, 52 (2d Cir. 1998).  However, "the Supreme Court has now apparently foreclosed that avenue . . . ."  *Ridgeway*, 424 F. App'x at 60 (citing *Pinholster*, 131 S. Ct. at 1413).

made even without the client's express consent). "A lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision." *Id.* (citing *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir. 1996)).

To establish prejudice, the test is whether "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Garner*, 908 F.3d at 861-62. "[T]he question is not whether a court can be certain of counsel's performance had no effect on the outcome or whether it is *possible* a reasonable doubt might have been established if counsel acted differently." *Id.* at 862. The prejudice inquiry is "ineluctably tied to the strength of the prosecution's evidence." *Id.* (citation omitted). "Even serious errors by counsel do not warrant granting habeas relief where the conviction is supported by overwhelming evidence of guilt." *Id.* (citation omitted).

### 3. Claims of *Brady* Violations

In criminal prosecutions, "the government has a constitutional duty to timely disclose material, exculpatory evidence to criminal defendants," as well as "evidence that could be used to impeach a government witness." *United States v. Kirk Tang Yuk*, 885 F.3d 57, 86 (2d Cir. 2018) (citing *Giglio v. United States*, 405 U.S. 150 (1972); *Brady v. Maryland*, 373 U.S. 83 (1963). There are three essential elements of a *Brady* violation: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Banks v. Dretke*, 540 U.S. 668, 691 (2004) (citing *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)); *see also Kirk Tang Yuk*, 885 F.3d at 86. Prejudice can be shown when

"there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different.  In other words, favorable evidence is subject to constitutionally mandated disclosure when it 'could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'"  *Cone v. Bell*, 556 U.S. 449, 470 (2009); *see also Kirk Tang Yuk*, 885 F.3d at 86.

### 4.   Additional Considerations for Pro Se Petitioners

Submissions by a *pro se* petitioner are held to less stringent standards than formal pleadings drafted by lawyers. *Inoa*, 2018 WL 4110908, at *12 (citation omitted).  Courts must liberally construe a *pro se* petition to raise the strongest arguments it suggests. *Id.* (citing *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 472 (2d Cir. 2006)); *see also Newman v. Vance*, No. 20-CV-1416 (LLS), 2020 WL 1330763, at *1 (S.D.N.Y. Mar. 20, 2020) (citing *Triestman*, 470 F.3d at 474-75).  Although courts "accord filings from *pro se* litigants a high degree of solicitude, even a litigant representing himself is obliged to set out identifiable arguments in his principal brief." *Ho-Shing v. Budd*, 771 F. App'x 79, 80 (2d Cir. 2019) (quoting *Terry v. Inc. Vill. of Patchogue*, 826 F.3d 631, 632–33 (2d Cir. 2016)); *see also Brown v. Senkowski*, 152 F. App'x 15, 19 (2d Cir. 2005); *Platt v. Ercole*, No. 05-CV-6050 (JS), 2008 WL 5243891, at *4 (E.D.N.Y. Dec. 12, 2008).

## DISCUSSION

Applying the solicitous *pro se* review standards outlined above, the petition raises several grounds for consideration, most of which are barred by the exhaustion doctrines discussed

herein.  Though the petition purports to raise ten independent grounds, in fact, the issues raised

can be readily analyzed in several categories: (a) blood test evidence issues, encompassing

Grounds I, II and IX; (b) miscellaneous evidentiary issues raised in Grounds II, III, IV and VIII;

(c) sentencing considerations, including defendant's status as a persistent felony offender, raised

in Grounds V and VI; and (d) procedural improprieties, including claims of ineffective assistance

of counsel and purported impropriety in the grand jury, raised in Grounds VII and X

respectively.  Writ 1-23.

For avoidance of doubt, the Court has considered *all* of petitioner's arguments on the

merits, assuming said issues are not procedurally barred, and concludes that none warrant federal

habeas relief.    Several of those issues are discussed further below.

### a.   Blood Test Evidence Contentions

Petitioner raises several challenges to the manner by which his blood sample was

collected as well as claims regarding the failure to obtain and produce evidence regarding the

calibration of the equipment, testimony of the technician who performed the test on petitioner's

blood and the adequacy of the foundation for admission of the resulting toxicology report.  *See*

Writ (Grounds I, II, and IX).  In the main, these claims are barred based upon petitioner's failure

to exhaust state remedies and/or under the independent and adequate state grounds doctrine.

For example, petitioner raised some of the same arguments on direct appeal.  *See* Pro Se

Supp. Br. 32, DE 20 at 199 (Ground I); Appellant Br. 47-50 (Ground II).  As to these issues, the

Second Department held that petitioner's "remaining contentions, including those raised in his

*pro se* supplemental brief, are unpreserved for appellate review and, in any event, without merit."

*Licausi*, 122 A.D.3d at 773-74.  New York's contemporaneous objection rule, New York

Criminal Procedure Law ("CPL") § 470.05(2), requires that "an alleged error be 'brought to the attention of the trial court at a time and in a way that [gives it] the opportunity to remedy the problem and thereby avert reversible error." *Thompson v. Artus*, No. 10-CV-1443 CBA, 2013 WL 6408354, at *6 (E.D.N.Y. Dec. 6, 2013).  This rule has "long been considered an 'adequate and independent ground.'"  *Id.* (citing *Whitley v. Ercole*, 642 F.3d 278, 292 (2d Cir. 2011)); *see also Green*, 414 F.3d at 294.  The Second Department's holding that the arguments are "unpreserved for appellate review and, in any event, without merit" creates no ambiguity as to the procedural bar.  *Green*, 414 F.3d at 294.

Similarly, as to the toxicology report, petitioner argued in a motion to renew the second motion to vacate the judgment that the toxicology report was admitted through surrogate testimony in violation of his right to confrontation.  Licausi Mot. to Renew 2d 440 Mot. 3, DE 20-1 at 317.  The County Court held "any issue defendant may have had regarding the admissibility of the report is a matter that could have and should have been raised on appeal . . . ."  Order dated Dec. 6, 2013 at 3, DE 20-1 at 406.  Thus, it appears that the blood test evidence arguments are procedurally barred.

One nuance here bears noting: Regarding petitioner's contention that the police officers' collection of his blood sample was not in accordance with the New York State Vehicle and Traffic Law ("VTL") procedures, this issue was clearly appealed, as the Second Department held:

> The County Court properly denied that branch of the defendant's omnibus motion which was to suppress the results of a blood test on the ground that his blood was not obtained in compliance with Vehicle and Traffic Law § 1194(3). Under the circumstances here, although the police did not strictly comply with the procedures for obtaining a court order to compel the defendant to submit to a chemical blood test under Vehicle and Traffic Law § 1194(3), there was substantial compliance with the requirements of the statute.

*Licausi,* 122 A.D.3d at 772.  The federal constitutional implications of these issues, plainly raised here, were not properly raised before the state court.  Thus, plaintiff has failed to satisfy the exhaustion requirement as to the federal constitutional issues, and is thus barred.

Nevertheless, this Court has examined, out of an abundance of caution, the issues raised in connection with the collection and analysis of the blood samples, and finds the arguments raised to be without merit.

The failure to comply with VTL § 1194 and the violation of the indelible right of counsel under the New York State Constitution are not bases for federal habeas relief because "federal habeas corpus relief does not lie for errors of state law." *Santiago*, 2020 WL 1956348, at *3.

The Supreme Court has held no Sixth Amendment right to counsel where petitioner is directed to provide a blood sample. *See S. Dakota v. Neville*, 459 U.S. 553, 559 n.8 (1983); *Schmerber v. California*, 384 U.S. 757, 765-66 (1966); *accord Gibson v. LaValley*, No. 12-CV-6031 (MAT), 2012 WL 5288776, at *4 (W.D.N.Y. Oct. 23, 2012) (citing *Schmerber*, 384 U.S. at 761-64); *Miller v. O'Bryan*, 498 F. Supp. 2d 548, 557 (N.D.N.Y. 2007) (citing *Schmerber*, 384 U.S. 757 at 760–66)).  Moreover, his Sixth Amendment rights did not attach because adversarial judicial criminal proceedings did not commence until after petitioner's blood was drawn.  *See* Trial Tr. 570, 577, 658, 1115; *cf. Rothgery v. Gillespie Cty. Texas*, 554 U.S. 191, 198 (2008); *accord United States v. Reed*, 756 F.3d 184, 187 (2d Cir. 2014).[9]

---

[9] Petitioner did not raise the argument that statements made to Officer Copozzi should be suppressed in the instant petition.  *See generally* Writ.  Petitioner made the suppression argument in the *Pro Se* Supplemental Brief for the first time in the case on direct appeal.  *Pro Se* Supp. Br. 36, DE 20 at 203; Resp't's Br. To *Pro Se* Supp. Br. 10, DE 20 at 237 (arguing procedural bar); *see also* Trial Tr. 29 (petitioner's counsel arguing in opening statement, "[Mr. Licausi] was cooperative during the entire afternoon.  Mr. Licausi told the police that he used cocaine during the past two weeks.  He told them he used cocaine the night before.  He told them where he used cocaine the night before.  He told them the name of the motel he used cocaine the night

While petitioner has argued extensively about the failure to provide documentation about the equipment used to effect the test and the failure to obtain testimony from the laboratory technician, no suggestion has been made concerning inaccuracies or improprieties that would have affected the substantive results or the outcome of the trial. *See generally* Writ 6. Indeed, as described in the factual recitation, there seemed to be little dispute that the defendant had used cocaine, a fact thoroughly corroborated by observations of other witnesses and, to some extent, by admissions by the defendant himself. Moreover, this Court will not disturb the considered finding of the state appellate court that there was "substantial compliance" with the VTL procedures. *See Lewis v.* Jeffers, 497 U.S. 764, 780 (1990) ("federal habeas corpus relief does not lie for errors of state law"); *see also Heidgen v. Graham*, 420 F. Supp. 3d 1, 11 (E.D.N.Y. 2019) (citing *Lewis*, 497 U.S. at 780). Even assuming a failure in this regard, plaintiff has not demonstrated prejudice from such failings. *Cone*, 556 U.S. at 470 (defining prejudice in the context of a *Brady* violation); *see also* Trial Tr. 702-793 (Officer Copozzi's determination that petitioner was impaired); *id.* at 803-10 (petitioner's counsel, upon consultation with petitioner, consented to waiving any questioning of the analyst who tested petitioner's blood, thereby foreclosing any questioning as to how the blood was tested); *id.* at 1090, 1113 (petitioner testified that he had used one gram of cocaine one day earlier at the Econo Lodge).[10]

---

before."). The Second Department held that petitioner's "remaining contentions, including those raised in his pro se supplemental brief, are unpreserved for appellate review and, in any event, without merit." *Licausi*, 122 A.D.3d at 773-74. Therefore, even if the suppression argument were raised in the instant petition, it would be procedurally barred on independent and adequate state grounds and petitioner failed to demonstrate cause and prejudice.

[10] As evident by foregoing discussion, the nondisclosure of the equipment did not deprive petitioner of a fair trial. *See Jones v. Stinson*, 229 F.3d 112, 119-20 (2d Cir. 2000) (under this analysis, the federal court should consider whether "the omitted evidence [evaluated in the context of the entire record] creates a reasonable doubt that did not otherwise exist."); *see also Garcia v. Franchi*, No. 19-CV-5547 (BMC), 2020 WL 353099, at *8 (E.D.N.Y. Jan. 21, 2020).

The Supreme Court has held that introduction of a forensic laboratory report without supporting testimony can violate the Confrontation Clause.  *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009).  However, as the Court explained, a criminal defendant can stipulate to waive such testimony:

> Defense attorneys and their clients will often stipulate to the nature of the substance in the ordinary drug case.  It is unlikely that defense counsel will insist on live testimony whose effect will be merely to highlight rather than cast doubt on the forensic analysis.  Nor will defense attorneys want to antagonize the judge or jury by wasting their time with the appearance of a witness whose testimony defense counsel does not intent to rebut in any fashion.

*Melendez-Diaz*, 557 U.S. at 328; *accord Bullcoming v. New Mexico*, 564 U.S. 647, 652 (2011) (interpreting *Melendez-Diaz* to hold "[a]bsent stipulation, . . . the prosecution may not introduce a [forensic laboratory report stating that a suspect substance was cocaine] without offering a live witness component to testify to the truth of the statements made in the report.").

As noted above, defense counsel raised this precise Confrontation Clause argument, but after extensive discussion on the record, the trial judge suggested that trial counsel confer with petitioner to see if the "testimony could be stipulated and could avoid the Crawford problem." Trial Tr. 802-09.  After conferring, trial counsel stated on the record: "After consulting with my client and explaining the ramifications of this issue that we've just been discussing, my client has advised me that he'll consent to Ms. Arendt being the sole witness from the lab." *Id.* at 810.  The strategic implications of this decision is further demonstrated by subsequent attempts by counsel to obtain concessions from the prosecution in the immediate aftermath of this endeavor. *Id.* at 811-13.  Thus, petitioner waived the asserted Confrontation Clause violation.

---

Furthermore, the Second Department reduced the lower end of defendant's indeterminate sentence to 18 years from the 25 years originally imposed, acting discretionarily and in the interests of justice.  This substantial reduction further demonstrates the robust nature of the appellate review process in this case.

Thus, the allegations relating to the blood test evidence cannot form a basis for habeas relief.

    b.   Other Evidentiary Issues

Petitioner raises several miscellaneous evidentiary issues in support of his petition. These include (1) the attempted introduction of a statement by defendant without appropriate notice; (2) the failure to disclose GPS records, and the destruction of hard drive in Officer Bogliole's patrol car, (3) the refusal to permit evidence from an Internal Affairs investigation into the conduct of the arresting officer and (4) supposed "newly discovered" evidence relating to GPS records and an investigator report emanating from related civil proceedings.   Writ (Grounds II, III, IV, and VIII).

Plaintiff failed to "fairly present" his constitutional claims for review in the state court. *Compare* Writ 9 (petitioner argues under Ground IV that introduction of petitioner's statement, "I killed him," without providing notice under CPL 710.30 violates right to fair trial under Sixth Amendment and due process under Fourteenth Amendment) *with* Appellant Br. 54, DE 20 at 125 (arguing violation of CPL 710.30, but not of federal constitutional rights); *compare* Writ 14-17 (arguing under Ground VIII that "newly discovered evidence" constitutes due process violation under Fourteenth Amendment) *with* Licausi 2d 440 Mot. 24-28, DE 20-1 at 116-120 (arguing "newly discovered evidence" requires the court to order a new trial under state law). [11]

---

[11] Ordinarily, in the case of claims barred by the exhaustion doctrine, petitioner should be permitted to return to state court to exhaust his claims unless no state corrective procedure remains available.  Here, petitioner has fully litigated his direct appeal, two motions to vacate the judgment, and he has failed to timely seek final appeal as to the denial of writ of error coram nobis.  *See Redding v. New York State Dep't of Corr.*, No. 17-CIV-7075 (CS)(JCM), 2020 WL 614835, at *11 (S.D.N.Y. Feb. 10, 2020); *Davis v. Griffin*, No. 16-CV-550, 2019 WL 1384587,

In other instances, even where presented, these issues were found inadequately preserved based upon independent and adequate state grounds.  First, the same arguments as to the GPS records and Officer Bogliole's hard drive were made to the Second Department, which held that petitioner's "remaining contentions, including those raised in his *pro se* supplemental brief, are unpreserved for appellate review and, in any event, without merit."  *Licausi*, 122 A.D. 3d at 773-74.  Furthermore, petitioner argued in his second motion to vacate the judgment that the GPS records and investigator report connected with the civil case are "newly discovered evidence" warranting a new trial.  *Licausi* 2d 440 Mot. 24-28.  The Suffolk County Court held that the petitioner's "newly discovered evidence" was "available to him during the course of the trial" and that his claim is procedurally barred under state law.  Order dated June 30, 2016 at 3, DE 20-1 at 312.  *See* Writ 14-17.  Thus, it would appear that these arguments are precluded based on the procedural bars discussed above.

Once again, though, the Court has examined the issues raised and find them to be without merit.  Petitioner argues that Officer Bogliole's testimony that petitioner stated, "I killed him" without providing prior notice of a criminal defendant's statement under CPL § 710.30(1)(a) deprived petitioner of a fair trial under Sixth and Fourteenth Amendments.  Writ 9; Pet'r's Reply Br. 13.

---

at *3 (W.D.N.Y. Mar. 27, 2019); *Geron v. Graham*, No. 18-CV-168 (GHW) (DF), 2020 WL 1876357, at *2 (S.D.N.Y. Apr. 15, 2020); *Shomo v. Maher*, No. 04-CV-4149 (KMK), 2005 WL 743156, at *3 (S.D.N.Y. Mar. 31, 2005).  Petitioner has not demonstrated any cause and prejudice as to failure to exhaust any available remedies, and the Court finds none.  *See generally* Writ; Pet'r's Reply Br.  Thus, as to all of petitioner's claims barred by these doctrines, the Court has considered these matters on the merits in an abundance of caution.  *See* 28 U.S.C. § 2254(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

The trial court held that petitioner was "sufficiently prejudiced by that remark being not contained in the 710.30 notice," but found that the prejudice did not rise to a level to require a mistrial.  May 27, 2010 Hr'g Tr. 4, DE 20-5 at 4.  Instead, the court instructed the jury "that they are to disregard that remark by Officer Bogliole."  *Id.* at 4-5.  The Second Department held, "the court providently exercised its discretion in denying the defendant's motion for a mistrial."  *Licausi*, 122 A.D.3d at 773.

To the extent petitioner argues that the statement violates CPL 710.30, "it is not the providence of a federal habeas court to reexamine state-court determinations on state-law questions."  *See Chatmon v. Mance*, No. 07 CIV. 9655 (KMK) (GAY), 2010 WL 7768902, at *3 (S.D.N.Y. Apr. 8, 2010) (citing *Estelle v. McGuire*, 502 U.S. 62, 68 (1991))*, report and recommendation adopted*, 2011 WL 5023243 (S.D.N.Y. Oct. 20, 2011).

Petitioner also fails to show that the testimony deprived him of a fundamentally fair trial.  A jury is presumed "to follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions. . . ."  *Chatmon*, 2010 WL 7768902, at *6 (quoting *Greer v. Miller*, 483 U.S. 756, 767 n.8 (1987)).  In *Chatmon v. Mance*, as here, where a police witness provided testimony materially different than the statement noticed under CPL 710.30, and the trial court "struck the offending verbiage and instructed the jury to disregard it," then "the challenged testimony . . . did not deprive the petitioner of a fundamentally fair trial."  *Id.*; *see also Goddard v. Greiner*, No. 02-CV-1352 (JBW), 2003 WL 23185748, at *5 (E.D.N.Y. Oct. 28, 2003); *Ricketts v. Mazzuca*, 250 F. Supp. 2d 131, 135 (E.D.N.Y. 2003).  Furthermore, there is no dispute that petitioner killed Mr. Foster.  Trial Tr. 1194 ("You say I killed him.  It was an accident.  It was a fatal accident caused by Officer Bogliole's reckless pursuit of me, yes,

absolutely.").  Therefore, the Second Department's decision on this ground was not contrary to, or did it amount to an unreasonable application of clearly established federal law under as determined by the Supreme Court.

Nothing on this record supports the notion that the failure to maintain and/or provide GPS constitutes an actionable *Brady* violation.  *See Brady v. Maryland*, 373 U.S. 83, 86 (1963) (violation of Fourteenth Amendment due process); Writ 6-8 (arguing Fourteenth Amendment due process violations).  Here, though there was some conflicting testimony as to the route taken during the police chase, such conflict seems entirely immaterial to the events at issue. Petitioner's own testimony at trial established that he disobeyed Officer Bogliole's orders to stop, drove away, was speeding, ignored numerous traffic signs and restrictions, and caused Mr. Foster's death.  Trial Tr. 1151-71, 1194.  Establishing that the police pursuit occurred by a different route from the GPS records could not "reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."  *Cf. Cone*, 556 U.S. at 47; *see* Pet'r's Reply Br. 7.  Therefore, there is no *Brady* violation as to the GPS records.[12]

Next, the preclusion of testimony by Deputy Inspector Christopher Hatton of the Internal Affairs Bureau did not violate petitioner's right to confrontation.  Writ 8; Pet'r's Reply Br. 10-14.  The Confrontation Clause does not entitle petitioner to introduce extrinsic evidence—here,

---

[12] To the extent petitioner argues a destruction of evidence claim as a violation of due process apart from the *Brady* claim, that claim must also fail.  Such a claim requires the showing of bad faith from the government.  *See United States v. Tyree*, 279 F. App'x 31, 33 (2d Cir. 2008) (citing *Arizona v. Youngblood*, 488 U.S. 51, 56-68 (1988); *California v. Trombetta*, 467 U.S. 479, 489 (1984)).  Petitioner's own submissions his second motion to vacate the judgment demonstrate that bad faith does not exist here.  *See* Licausi 2d 440 Mot. Ex. 8 at 5; DE 20-1 at 71 ("The attached subpoena cannot be complied with as the hard drive installed in Sector Car 620 [Officer Bogliole's police vehicle] on May 8, 2008 has been replaced with a new computer system.  All of the old computer systems were decommissioned and the associated hard drives were shredded for security purposes."); *cf. Tyree*, 279 F. App'x at 33.

Deputy Inspector Hatton's testimony— in an effort to show that the existence of an Internal

Affairs investigation gave rise to Officer Bogliole's motive to fabricate.  *See Delaware v.*

*Fensterer*, 474 U.S. 15, 22 (1985); *accord Jackson v. Nevada*, 569 U.S. 505, 512 (2013) (citing

*Fensterer*, 474 U.S. at 22).  Instead, the Confrontation Clause was satisfied when the court

afforded petitioner a full and fair opportunity to cross-examine Officer Bogliole as to the Internal

Affairs report, which trial counsel carried out.  *Fensterer*, 474 U.S. at 22; *Jackson*, 569 U.S. at

512.[13]

Finally, plaintiff suggests that there was "newly discovered evidence" warranting federal

habeas relief, including a report from an investigator in parallel civil case opining that the officer

was reckless and/or negligent in the pursuit of the petitioner.  Writ 14-17.  Even if true and not

procedurally barred, such "evidence" does not qualify as "newly discovered evidence," *see*

*Schlup v. Delo*, 513 U.S. 298, 324 (1995), and would not warrant habeas relief.  *See Herrera v.*

*Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered

evidence have never been held to state a ground for federal habeas relief absent an independent

constitutional violation occurring in the underlying state criminal proceeding."); *accord District*

*Attorney's Office v. Osborne*, 557 U.S. 52, 71 (2009); *Djenasevic v. New York*, No. 17-CV-6366

(MKB), 2019 WL 653153, at *5 (E.D.N.Y. Feb. 15, 2019).

---

[13] Indeed, the impeachment value of calling Inspector Hatton was limited.  An "Internal
Correspondence," which petitioner submitted as an exhibit from the second motion to vacate the
judgment, showed that Internal Affairs Bureau "[e]xonerated" Officer Bogliole.  Licausi 2d 440
Mot. Ex. 9.  Officer Bogliole also testified that it was "normal" to file an Internal Affairs report
in that case, and he was not aware of any finding by the Internal Affairs Bureau.  Trial Tr. 542,
583.  Inspector Hatton testified that neither he nor anybody from Internal Affairs spoke with
Officer Bogliole, and Officer Bogliole was not reprimanded.  *Id.* at 1025-26.

c.   Sentencing as a Persistent Felony Offender

Petitioner argues that (1) the court abused its discretion in sentencing petitioner as persistent felony offender, and (2) the sentence was excessive.  Writ 10.

Petitioner's argument that the sentencing court abused its discretion in sentencing him as a persistent felony offender is non-cognizable under federal habeas review.  *See Dixon v. Lee*, No. 14-CV-7162 (SLT), 2017 WL 4402439, at *9 (E.D.N.Y. Sept. 29, 2017).  Given petitioner's *pro se* status, however, the Court construes petitioner's argument that the New York courts engaged in an unreasonable application of clearly established federal law.  Nonetheless, petitioner cannot prevail.

At issue here is the so-called "'discretionary' persistent felony offender statute." *Portalatin v. Graham*, 624 F.3d 69, 74 (2d Cir. 2010) (citing CPL 400.20).  Under this statute, the first step is a "recidivism finding," which is satisfied where "the prosecution . . .  prove[s] beyond a reasonable doubt . . . that [the criminal defendant] has previously been convicted of two or more qualifying felonies . . . ."  *See Portalatin*, 624 F.3d at 74, 90.  Once the first step is established, the judge is authorized to impose an indeterminate sentence corresponding to that of a class A-I felony, "which ranges from a minimum of fifteen to twenty-five years, and a maximum of life in prison."  *Id.* at 74, 90 (citing CPL §§ 70.10(2); 70.00(3)(a)(i)).

At the second stage, the sentencing judge, in her discretion, considers whether to depart from imposing the A-I felony sentence after considering the factors of "history and character" and "nature and circumstances of [the defendant's] criminal conduct."  *Id.* at 74.  In other words, "it would not be an error of law for a sentencing judge to impose a class A-I sentence based solely on the recidivism findings alone."  *Id.* at 90 (citing *People v. Rivera*, 5 N.Y.3d 61, 68 (2005)); *see also id.* at 88-89 (citing *Rivera*, 5 N.Y.3d at 68) ("the predicate felonies [are] the

'sole' determinant for whether a judge is authorized to impose a [Persistent Felony Offender] sentence, and that '*no* additional factfinding beyond the two prior felony convictions is required' to impose the enhanced sentence.")) The Second Circuit held that "judicial factfinding that is undertaken to select an appropriate sentence *within* an authorized range, . . . does not offend the Sixth Amendment." *See id.* at 88. In sum, once the first step is satisfied and the sentence imposed is within the range of an A-I felony, petitioner is not entitled to federal habeas relief. *Id.* at 88; *see also Dixon*, 2017 WL 4402439, at *9 (citing *Portalatin*, 624 F.3d at 84). Thus, claims of an excessive sentence fail given that the petitioner was sentenced within the appropriate range.

Equally unavailing is petitioner's attempt to attack the guilty plea in 2002, which was relied upon, in part, to determine the sentencing range. Writ 10. The Supreme Court has held:

> once a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid . . . . If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained.

*Lackawanna Cty. Dist. Att'y v. Coss*, 532 U.S. 394, 403-04 (2001). Here, petitioner pled guilty and waived his right to appeal the plea in 2002, and served the period of incarceration as to that plea. Oct. 6, 2010 Hr'g Tr. 23-24, 49. Therefore, the plea in 2002 is conclusively valid, and petitioner may not challenge the enhanced sentence through a § 2254 petition on the ground that the plea in 2002 was unconstitutionally obtained.

Next, petitioner challenges his sentence as excessive. "It is well settled that an excessive sentence claim may not be raised as grounds for habeas corpus relief if the sentence is within the range prescribed by state law." *Cardova v. Lavalley*, 123 F. Supp. 3d 387, 398 (E.D.N.Y. 2015);

*see also Dixon*, 2017 WL 4402439, at *9 (citing *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992)).

Here, petitioner is not entitled to habeas relief based upon these arguments because petitioner was properly sentenced as a Persistent Felony Offender, and the sentence imposed was within the range for an A-I felony.  The prosecution has proven beyond a reasonable doubt through certificates of convictions and certificates of incarceration that petitioner pled guilty to qualifying felonies in 1996 and in 2002, and petitioner was sentenced to incarceration in excess of one year on separate occasions in 1996 and in 2002.  Oct. 6, 2010 Hr'g Tr. 23-24, DE 20-5 at 57-58.  Petitioner has met the criteria for a persistent felony offender.  *See* CPL 70.10(1)(a)-(c). The trial court sentenced defendant to concurrent sentences of twenty-five years to life.  Oct. 21, 2010 Sentencing Tr. 39-40, DE 20-5 at 153-54.  The Second Department reduced that sentence to eighteen years to life imprisonment as a matter of discretion in the interest of justice.  *People v. Licausi*, 122 A.D.3d 771, 772 (N.Y. App. Div., 2d Dep't 2014).  That sentence falls within the range prescribed by state law.  *Portalatin*, 624 F.3d at 74, 90 (citing CPL §§ 70.10(2); 70.00(3)(a)(i)); *see also Cardova*, 123 F. Supp. 3d at 398 (E.D.N.Y. 2015).  Therefore, petitioner is not entitled to federal habeas relief on these arguments.[14]

---

[14] Nor should the trial judge have recused himself in this case.  The court's judicial remarks, critical of the petitioner, were based upon facts introduced and events occurring during the proceedings before the court, or of prior proceedings, and do not form the basis for recusal.  *See Liteky v. United States*, 510 U.S. 540, 555-56 (1994); *see also McMahon v. Hodges*, 382 F.3d 284, 288 (2d Cir. 2004); *United States v. Jones*, 294 F. App'x 624, 627 (2d Cir. 2008).

d.  Miscellaneous Procedural Issues

The balance of the petition concerns a "kitchen sink" assertion of a variety of procedural issues.   These include claims of ineffective assistance of counsel and purported error in the grand jury.  These claims are meritless.

Petitioner argues that he was deprived of effective assistance of trial counsel under the Sixth Amendment because (1) counsel failed to inform petitioner of a claimed conflict of interest on the part of the trial judge, (2) counsel failed to effectively use the court appointed toxicologist and private investigator, (3) counsel curtailed petitioner's ability to testify, (4) counsel misled petitioner as to the sentencing range, and (5) counsel was ineffective for not confronting the forensic scientist who tested petitioner's blood.  Writ 14.[15]  Upon *de novo* review, petitioner's ineffective assistance of counsel claims cannot succeed.

First, trial counsel's failure to inform the petitioner that petitioner and the judge went to the same high school does not constitute deficient performance because counsel provided reasonable justification for the decision: neither petitioner nor the trial judge recognized each other.  *See* Licausi 2d 440 Mot. Ex. 4 (letter by trial counsel to petitioner explaining reasoning).

Second, in light of overwhelming evidence as discussed above, petitioner cannot show prejudice for failure to call a toxicologist.  *See* Trial Tr. 702, 793, 827-28, 803-10.  The record also shows that, despite petitioner's protestations, trial counsel in fact used the private

---

[15] As to purported ineffective assistance of counsel, petitioner makes various arguments in bullet points without any further explanation.  *See* Writ 14.  Given petitioner's *pro se* status and since these points were made in the second motion to vacate the judgment, the Court also considers arguments made in the second motion to vacate the judgment.  *Id.*; Pet'r's Reply Br. 20-32; Licausi 2d 440 Mot.  Only the conduct of petitioner's third attorney, Michael Ahern, is at issue in this argument.  *See* Licausi 2d 440 Mot. 22-24.

investigator before trial.  *See id.* at 113.  Moreover, the record belies that assertion that Officer

Bogliole was "tailgating" the petitioner.  *See id.* at 164, 179, 377, 584.

Third, the record also does not show that trial counsel curtailed petitioner's ability to

testify.  *See* Trial Tr 1196 (trial counsel indicated no further questions after end of cross

examination); *cf. Kiejliches v. Perez*, No. 07-CV-2397 NGG, 2011 WL 3348075, at *8

(E.D.N.Y. July 29, 2011).  Fourth, trial counsel did not mislead the petitioner as to the

sentencing range.  *See* Ahern Aff. ¶¶ 13, 16, 17, DE 20-1 at 79-80.  Finally, trial counsel's

strategic decision, made after extensive discussions on the record and in consultation with the

petitioner, to waive the testimony of the analyst who tested petitioner's blood, does not constitute

deficient performance.  *See* Trial Tr. 802-13.

As to purported error in the grand jury, such claim is barred by the exhaustion doctrine.

*See* Writ 20 (arguing under Ground X, for the first time, prosecutorial misconduct rendered the

grand jury process unfair and indictment should be dismissed).   It also fails on the merits.  In

*United States v. Mechanik*, the Supreme Court held, "the societal costs of retrial after a jury

verdict of guilty are far too substantial to justify setting aside the verdict simply because of

an error in the earlier grand jury proceedings."  475 U.S. 66, 73 (1986); *accord Bruno v. Coveny*,

No. 18-CV-1522 (AMD), 2020 WL 1812460, at *2 (E.D.N.Y. Apr. 9, 2020); *Lewis v. Graham*,

No. 9:16-CV-01507-JKS, 2020 WL 586750, at *4 (N.D.N.Y. Feb. 6, 2020) (holding error in

state grand jury proceedings not cognizable on habeas review where petitioner alleges that

prosecutor presented false evidence in the grand jury).  Therefore, petitioner cannot prevail on

this ground.  Thus, plaintiff has failed to establish entitlement to relief based on any of these

claims.

e.   Motion to Appoint Counsel

Petitioner filed a motion for reconsideration of appointment of counsel so that "these violations can be explained in a simple, concise explanations. . . ."  DE 46.  On March 31, 2018, Judge Azrack had denied petitioner's motion to appoint counsel, finding "(1) petitioner's claims seem unlikely to be of substance; (2) petitioner has adequately and competently set forth his claims in his petition and (3) there is no special reason to appoint counsel."  DE 26 at 3. Upon reconsideration, and in light of the decision herein, the Court adheres to the original denial of the appointment of counsel.


## CONCLUSION

Based on the foregoing, the petition is DENIED. A certificate of appealability shall not issue because Petitioner has not made a substantial showing that he was denied a constitutional right.  *See* 28 U.S.C. § 2253(c)(2); *Middleton v. Attys. Gen.*, 396 F.3d 207, 209 (2d Cir. 2005). The Court certifies that any appeal of this Order would not be taken in good faith, and thus *in forma pauperis* status is denied for the purpose of any appeal.  *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).  The Clerk of the Court is directed to serve a copy of this decision upon *pro se* petitioner, and close the case.


**SO ORDERED.**

Dated: Central Islip, New York
     May 19, 2020                /s/ Gary R. Brown
                                      GARY R. BROWN
                                      United States District Judge